560 F.2d 1384
 Santiago DE LAO and Frank Brito, Plaintiffs-Appellees,
v.
Joseph A. CALIFANO, Jr., successor to Caspar Weinberger,
Secretary, Department of Health, Education, and
Welfare, et al., Defendants-Appellants.
Arthur FERGUSON, Plaintiff-Appellant,
v.
Joseph A. CALIFANO, Jr., successor to Caspar Weinberger,
Secretary, Department of Health, Education, and
Welfare, et al., Defendants-Appellees.
Arthur FERGUSON, Plaintiff-Appellee,
v.
Joseph A. CALIFANO, Jr., successor to Caspar Weinberger,
Secretary, Department of Health, Education, and
Welfare, et al., Defendants-Appellants.
Walter J. WHITE et al., Plaintiffs-Appellants,
v.
Joseph A. CALIFANO, Jr., successor to Caspar Weinberger,
Secretary, Department of Health, Education, and
Welfare, et al., Defendants-Appellees.
 Nos. 76-1365, 75-2633, 75-2987 and 76-2756.
 United States Court of Appeals, Ninth Circuit.
 Sept. 19, 1977.
 
 Harry R. Silver, Dept. of Justice, Washington, D. C., argued for defendants-appellants in 75-2987 and 76-1365, and for defendants-appellees in 75-2633.
 Steven L. Bunch, of Montana Legal Services Assn., Helena, Mont., argued for plaintiff-appellee in 75-2987 and for plaintiff-appellant in 75-2633.
 Andrew M. Hull, Maricopa County Legal Aid Society, El Mirage, Ariz., argued for plaintiffs-appellees in 76-1365.
 Appeal from the United States District Court for the District of Arizona.
 Appeal from the United States District Court for the District of Montana Butte Division.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before DUNIWAY and CHOY, Circuit Judges, and BONSAL,* District judge.
 DUNIWAY, Circuit Judge:
 
 
 1
 These are class actions against the Secretary of Health, Education, and Welfare, challenging his termination, without a prior evidentiary hearing, of certain disability payments under the federal Supplemental Security Income program (SSI), 42 U.S.C. Ch. 7, Sub. Ch. XVI, §§ 1381ff.
 
 
 2
 I. STATUTORY AND FACTUAL BACKGROUND.
 
 
 3
 On October 30, 1972, Congress enacted the Social Security Amendments of 1972, Pub.L. 92-603, 86 Stat. 1329, which repealed three categorical assistance programs of federal grants to states for state-administered programs of assistance to poor persons, including disability programs under Title XIV of the Social Security Act. The amendments also established, in an amended Title XVI of the Social Security Act (42 U.S.C. § 1381 et seq.), a new federal program identified as the "Supplemental Security Income Program," which was to be administered by the Secretary and was to become effective January 1, 1974.
 
 
 4
 Under the new SSI program, the federal government assumed most of the burden of providing benefits to those needy persons who were disabled as defined by the Act. As part of the definition of disability, Congress included a "grandfather" clause whereby persons receiving disability benefits as of December, 1973, under a state plan approved under former Title XIV or XVI as in effect for October, 1972, were considered disabled for purposes of the new SSI program. 86 Stat. 1471-72, 42 U.S.C. § 1382c(a)(3)(A) (Supp. II, 1972).
 
 
 5
 After the Act was enacted, Congress became concerned that some states were transferring their welfare recipients to their disability rolls in anticipation of the federal takeover on January 1, 1974. On December 31, 1973, Congress amended the "grandfather" clause by striking it from subparagraph (A) and reenacting it as subparagraph (E), with a further requirement that in addition to receiving benefits in December, 1973, an individual must also have received benefits for at least one month prior to July, 1973. Pub.L. 93-233, Sec. 9, 87 Stat. 947, 957. As a result, all persons who became qualified under a state plan after July 1, 1973, had to meet the new federal standards of disability to be eligible under the SSI program.
 
 
 6
 Although the Secretary did not have to pay any disability benefits to these "rollback" recipients, nevertheless, to avoid administrative difficulties and the imposition of hardship upon the recipients, he ordered that benefits be paid to all such persons, for a period up to three months, upon a basis of presumptive disability, until an eligibility determination could be made.[1]
 
 
 7
 At the Secretary's request, Congress, too, recognized that a suspension of benefits could, indeed, be harsh in some situations and that three months was insufficient time in which to make eligibility determinations for all of these individuals. On March 28, 1974, it enacted Pub.L. 93-256, 88 Stat. 52 (1974), which provided that, pending an initial determination of eligibility under SSI, the Secretary could continue to pay presumptive benefits during 1974.[2]
 
 
 8
 The Secretary made his initial determinations of eligibility of the "rollback" recipients by reviewing the records of the state's disability assistance program for those recipients. No prior hearing was afforded to those in this "rollback" class who were found not to be disabled under the federal standards, and their benefits were withheld. Following the initial determination, those persons were given an opportunity for a full evidentiary hearing on the question of their eligibility. Those rollback recipients who were found to be eligible at such hearings recovered, pursuant to 42 U.S.C. § 1383(b), all benefits previously withheld.
 
 
 9
 II. THE PRESENT APPEALS.
 
 
 10
 A. De Lao (No. 76-1365) was brought on behalf of a class of individuals in Arizona who began receiving Aid to the Permanently and Totally Disabled (APTD) benefits from the state under its program after July 1, 1973, and who were initially determined by the Secretary to be ineligible for benefits under the federal SSI program, thus having those benefits terminated. The district court entered a final judgment which (1) enjoined the Secretary from withholding benefits until class members had been given notice and an opportunity for a prior evidentiary hearing and (2) awarded class members benefits retroactive to the date of termination. The Secretary appeals from that judgment. The district court stayed its injunction pending this appeal.
 
 
 11
 B. Ferguson (Nos. 75-2633 and 75-2987) was brought on behalf of a class of individuals in Montana who began receiving state Aid to the Disabled (AD) benefits under the state program after July 1, 1973, and were also initially determined by the Secretary to be ineligible for benefits under the SSI program. The district court entered a final judgment in favor of the Secretary, denying the motion to maintain a class action, dissolving the preliminary injunction, and dismissing the plaintiffs' action on the merits. This appeal followed.
 
 
 12
 C. White (No. 76-2756) is a similar suit brought on behalf of a class of individuals who began receiving Disability Assistance (DA) benefits from the state of Washington under its program after July 1, 1973, and were found by the Secretary to be ineligible for SSI benefits. The district court entered final judgment in favor of the Secretary, holding (1) that he had not violated plaintiffs' due process rights by failing to provide pretermination hearings; and (2) that a subclass of individuals, who were certified as disabled prior to July, 1973, but who did not receive DA benefits until after July 1, 1973, were not entitled to be "grandfathered" into the SSI program.[3]
 
 
 13
 The passage of time has rendered parts of the plaintiffs' claims moot. As we show, infra, the plaintiffs would have no entitlement to SSI benefits after the end of 1974. We also hold that those found to be ineligible for SSI benefits are not entitled to retroactive benefits for the period between the Secretary's determination that they were ineligible and the time when that determination was confirmed after a hearing, or the end of 1974, whichever was sooner. To arrive at these conclusions, we need not decide whether the plaintiffs were deprived of due process when the Secretary found them ineligible and terminated their benefits without first giving them a hearing. For purposes of these appeals, we assume that they were thereby denied due process. Moreover, we need not decide whether it was error for the court in De Lao to issue the injunction. It could not in any event have continued in effect beyond 1974. Nor need we decide whether these are proper class actions. The Secretary tells us that every member of the class has either been given a post-termination hearing or has failed to ask for one. In addition, the entitlement, if any, of the members of the class terminated at the end of 1974.
 
 
 14
 III. JURISDICTION.
 
 
 15
 The Secretary conceded at oral argument, and we agree, that jurisdiction in these cases was properly founded upon 42 U.S.C. § 405(g) which provides:
 
 
 16
 (a)ny individual, after any final decision of the Secretary made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action . . . .
 
 
 17
 Here the plaintiffs' constitutional challenges are entirely collateral to their substantive claims of entitlement. The Secretary's decision not to provide a pretermination hearing for the "rollback" recipients was final as to that issue; and, therefore, it was not necessary for them to exhaust any further administrative remedies before invoking § 405(g) jurisdiction. Mathews v. Eldridge, 1976, 424 U.S. 319, 326-32, 96 S.Ct. 893, 47 L.Ed.2d 18; Elliott v. Weinberger, 9 Cir., 1977, 564 F.2d 1219, at 1225-1226, n.8a, (1977). See also, Califano v. Sanders, 1977, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192; Johnson v. Mathews, 8 Cir., 1976, 539 F.2d 1111, 1116-17; Tatum v. Mathews, 6 Cir., 1976, 541 F.2d 161, 163-64.
 
 
 18
 Jurisdiction was also appropriate under the federal mandamus statute,28 U.S.C. § 1361.[4] Elliott v. Weinberger, supra, at 1225-1226. See also, Wiren v. Eide, 9 Cir., 1976, 542 F.2d 757, 761, n.5.
 
 
 19
 IV. THE EXTENT OF PLAINTIFFS' INTEREST.
 
 
 20
 When filed, the actions presented the question whether the Secretary's termination of presumptive disability payments without prior evidentiary hearings violated the Due Process Clause of the Fifth Amendment. We do not answer that question; we assume that what the Secretary did violated due process. That assumption is based upon a further assumption, namely, that the relationship between the former federally aided state programs and the new SSI program, together with Pub.L. 93-256, conferred upon the rollback beneficiaries, i. e., the plaintiffs, an entitlement sufficient to require due process protection. Still further, we assume that the process that was due was a hearing before the Secretary terminated their benefits. See: Mathews v. Eldridge, supra, 424 U.S. at 332, 96 S.Ct. 893; Tatum v. Mathews, supra, 541 F.2d at 164-65; Johnson v. Mathews, supra, 539 F.2d at 1118-20; Ryan v. Shea, 10 Cir., 1975, 525 F.2d 268; Brown v. Weinberger, 4 Cir., 1975, 529 F.2d 514, sum. afg., D.Md., 1974, 382 F.Supp. 1092.
 
 
 21
 The only question we decide as to the plaintiffs' assumed entitlement is how long it lasted. To this we think the answer is clear. It did not last beyond the end of 1974.
 
 
 22
 Pub.L. 93-256 expressly provided for the continuation of presumptive disability benefits only "for any month in calendar year 1974." This was enacted after Congress had been assured by the Secretary that all eligibility decisions on rollback recipients could and would be made by that time. The Secretary did not achieve this result, and continued making payments after December 31, 1974, on the ground that such payments were consistent with the legislative intent behind the statute. See Buckles v. Weinberger, D.R.I., 1975, 398 F.Supp. 931, 943-45. The Congress, however, did not extend the time.
 
 
 23
 The question then becomes whether that decision by the Secretary is sufficient to confer a continuation of the plaintiffs' property interest beyond the year 1974. We conclude that it is not. In Board of Regents v. Roth, 1972,408 U.S. 564 at 578, 92 S.Ct. 2701 at 2709, 33 L.Ed.2d 548, the Supreme Court stated:
 
 
 24
 Just as the welfare recipients' "property" interest in welfare payments was created and defined by statutory terms, so the respondent's "property" interest in employment at Wisconsin State University-Oshkosh was created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the respondent's employment was to terminate on June 30. . . .
 
 
 25
 Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.
 
 
 26
 While we sympathize with the Secretary's position, his voluntary payment of benefits after 1974 to persons in the rollback category who had not yet had an initial determination of eligibility before the end of 1974 did not confer a property interest upon the plaintiffs. Their property interest, if any, was based on the initial SSI legislation and on Pub.L. 93-256 which extended the right to presumptive payments through 1974, if necessary. The property right extended by that statute terminated on December 31, 1974. At that point, those rollback beneficiaries whose rights depended on their being "presumptively" disabled under Pub.L. 93-256 were in the position of any other applicant for such benefits. They bore the burden of showing eligibility, and were not entitled to further benefits until they satisfied that burden. See Lavine v. Milne, 1976, 424 U.S. 577, 582-83, 584, 586-87, 96 S.Ct. 1010, 47 L.Ed.2d 249. If they succeeded, their benefits would be retroactive.
 
 
 27
 V. RETROACTIVE PAYMENT OF BENEFITS.
 
 
 28
 The plaintiffs also seek retroactive payment of benefits which were terminated before a hearing. Because all rollback recipients who were terminated and later found eligible recover all benefits withheld from them, the only persons affected by this issue are those who, after an evidentiary hearing, were found to be ineligible. (See 42 U.S.C. § 1383(b)). They seek recovery of the benefits that they would have received between the time when the payments were terminated and the time when they finally received a ruling after a hearing (or until the deadline for filing a request for a hearing had passed). In light of our conclusion that their property interest terminated on December 31, 1974, they would at most be entitled to benefits withheld before that date.
 
 
 29
 The Secretary argues that because "the judgment sought would expend itself on the public treasury," sovereign immunity bars the award of such retroactive benefits. Dugan v. Rank, 1963, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15, quoting from Land v. Dollar, 1947, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209. The Secretary also argues that Congress has never explicitly waived that immunity and that the plaintiffs' claim does not come within a judicial exception to the doctrine. We agree.
 
 
 30
 A. Waiver of Immunity.
 
 
 31
 In United States v. Testan, 1976, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114, the Court held that waiver of sovereign immunity requires that there be a federal statute which mandates the payment of damages by the government:
 
 
 32
 In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the argument . . . that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation.[5]
 
 
 33
 424 U.S. at 400-01, 96 S.Ct. at 954.
 
 
 34
 In the case at bar, as we assume, the plaintiffs had a sufficient property interest to be entitled to a pretermination hearing, but that does not necessarily mean that under the statutory scheme, they were also granted a substantive right to retroactive payments of presumptive SSI benefits for the period during which those benefits were wrongfully withheld. Thus, the issue here is whether any of the relevant federal statutes granted the plaintiffs a substantive right to retroactive payments.[6] We are unable to find such a waiver of sovereign immunity.
 
 
 35
 42 U.S.C. § 405(g) is only jurisdictional in nature and does not waive sovereign immunity or confer a substantive right. Johnson v. Mathews, supra, 539 F.2d at 1123. Thus, for the plaintiffs to be entitled to recover retroactive benefits, there must be a statute which, when read together with § 405(g), creates a "substantive right enforceable against the United States for money damages." Testan, supra, 424 U.S. at 398, 96 S.Ct. at 953. Pub.L. 93-256, which extended the permissible time period for presumptive payments until December 31, 1974, does not contain the necessary authorization. No congressional intent to pay such benefits after a determination of ineligibility had been made can be found in that statute. It only authorized presumptive disability payments until the Secretary made an eligibility determination or until the end of 1974, whichever came first.
 
 
 36
 We conclude that the United States has not waived its sovereign immunity for purposes of allowing the recovery of retroactive benefits.
 
 
 37
 B. Exceptions to Sovereign Immunity Doctrine.
 
 
 38
 Two exceptions to the doctrine of sovereign immunity have been recognized by the courts when the suit is brought against a government official rather than directly against the United States. Such suits may be brought if the official's actions were (1) ultra vires or (2) were performed pursuant to an unconstitutional statute or in an unconstitutional manner. Dugan v. Rank, supra, 372 U.S. at 621-22, 83 S.Ct. 999.
 
 
 39
 The plaintiffs argue that the Secretary's action in withholding their benefits before a hearing was unconstitutional and thus fits within the second exception. While that exception does apply for the purpose of allowing the court to exercise jurisdiction over the suit, it does not preclude sovereign immunity from barring the granting of monetary relief. As we recognized in Washington v. Udall, 9 Cir., 1969, 417 F.2d 1310, 1317: "Although an officer may have acted ultra vires or unconstitutionally, it is nevertheless possible that the doctrine of sovereign immunity will bar certain types of relief against the Government." (emphasis in original)
 
 
 40
 The Secretary relies upon footnote 11 in Larson v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, 691, 69 S.Ct. 1457, 1462, 93 L.Ed. 1628, which limits the application of the second exception as follows:
 
 
 41
 (A) suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.
 
 
 42
 We have construed that footnote to mean not that a suit must fail but only that it may fail if the relief sought would work an intolerable burden on the government which outweighs any considerations of private harm. Washington v. Udall, supra, 417 F.2d at 1318. Here, plaintiffs ask the court to order the federal government to pay retroactive benefits to individuals who have been found to be ineligible for benefits after a post-termination hearing. While the question is close, we conclude that ordering the payment of retroactive benefits from the federal treasury would "work an intolerable burden" on the government. In addition, no permanent harm results from this deference to sovereign immunity because Congress has authorized retroactive payments to those who are found eligible after a hearing. It is only those found not eligible who will not get retroactive payments. Retroactive relief for them is barred by sovereign immunity.
 
 CONCLUSION
 
 43
 In De Lao, No. 76-1365, we vacate the injunction as moot, and we reverse the remainder of the judgment.
 
 
 44
 In Ferguson, Nos. 75-2633 and 75-2987, and in White, No. 76-2756, we affirm.
 
 
 
 *
 The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 In ordering these payments of presumptive disability benefits, the Secretary liberally interpreted 42 U.S.C. § 1383(a)(4)(B) (Supp. III, 1973) which provides:
 (4) The Secretary
 may pay benefits under this subchapter to an individual applying for such benefits on the basis of disability for a period not exceeding 3 months prior to the determination of such individual's disability, if such individual is presumptively disabled and is determined to be otherwise eligible for such benefits, and any benefits so paid prior to such determination shall in no event be considered overpayments for purposes of subsection (b) of this section solely because such individual is determined not to be disabled.
 
 
 [2]
 Pub.L. 93-256 provides in pertinent part:
 (A)ny individual who would be considered disabled under section 1614(a)(3)(E) of the Social Security Act except that he did not receive aid under the appropriate State plan for at least one month prior to July 1973 may be considered to be presumptively disabled under section 1631(a)(4)(B) of that Act and may be paid supplemental security income benefits under title XVI of that Act on the basis of such presumptive disability, and State supplementary payments under section 212 of Public Law 93-66 as though he had been determined to be disabled within the meaning of section 1614(a)(3) of the Social Security Act, for any month in calendar year 1974 for which it has been determined that he is otherwise eligible for such benefits, without regard to the three-month limitation in section 1631(a)(4)(B) of that Act on the period for which benefits may be paid to presumptively disabled individuals, except that no such benefits may be paid on the basis of such presumptive disability for any month after the month in which the Secretary of Health, Education, and Welfare has made a determination as to whether such individual is disabled, as defined in section 1614(a)(3)(A) of that Act.
 
 
 [3]
 Because the members of the subclass of persons who were receiving welfare payments but not disability payments before July 1, 1973, but had been certified for DA payments before July 1, 1973, have all received administrative hearings on their "grandfather" claims, the plaintiffs' challenge to the district court ruling on that issue is no longer before us. The plaintiffs concede that "it is not necessary for this court to consider further the propriety of the plaintiffs' claim regarding full grandfather rights." Reply Brief at 2
 
 
 [4]
 The district courts in Ferguson (Record at 230) and De Lao (Record at 318) relied upon § 1361 for jurisdiction; and the district court in White (Record at 311-12) said that, while it may have had jurisdiction under § 1361, it clearly had jurisdiction under § 405(g), based on Eldridge
 
 
 [5]
 The plaintiffs also argue that in Testan the Court expressly disclaimed any application to the situation here by stating:
 Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim whether it be the Constitution, a statute, or a regulation does not create a cause of action for money damages unless, . . . that basis "in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." Eastport S.S. Corp. v. United States, 178 Ct.Cl. (599) at 607, 372 F.2d (1002) at 1008, 1009.
 The present action, of course, is not one concerning a wrongful discharge or a wrongful suspension. In that situation, at least since the Civil Service Act of 1883, the employee is entitled to the emoluments of his position until he has been legally disqualified. United States v. Wickersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906).
 (Emphasis added.) 424 U.S. at 401-02, 96 S.Ct. at 955.
 The plaintiffs maintain that because this is a case in which money was improperly retained by the government, Testan does not apply. We are not persuaded.
 The Court of Claims in Eastport explained what cases fit within the category of suits for money "improperly exacted or retained." Specifically, the class of cases to which the court was referring were those "in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." 372 F.2d at 1007. That is not the situation in any of these cases.
 The next paragraph cited from Testan refers to a specific statute which authorized payments due after a wrongful discharge or suspension. Again that does not apply to these cases. The problem here, discussed infra, is that there is no similar statute authorizing retroactive payments of the improperly terminated benefits.
 
 
 [6]
 Plaintiffs argue that the Fifth Amendment's Just Compensation Clause provides a "constitutionally self-executing damage remedy requiring no statutory waiver of sovereign immunity." The Supreme Court rejected that argument in United States v. Testan, supra, 424 U.S. at 401, 96 S.Ct. 948, and so do we in these cases. Here the government has not "taken" any property from the plaintiffs through its exercise of its powers of eminent domain. See, Jacobs v. United States, 1933, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142. Instead, the Secretary has discontinued making certain payments. We will not extend the requirements of the Just Compensation Clause to such a situation