Emmet M. CLARK, James A. Dorsey, A. D. McLane, Richard Cubbage, and John G. Terhune, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 77 C 2105.

United States District Court, N. D. Illinois, E. D.

Jan. 30, 1978.

Richard T. Cubbage, Evanston, Ill., C. A. Conway, Kenilworth, Ill., for plaintiffs.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This action arises under the Due Process Clause of the Fifth Amendment, and seeks a finding that classification under Title 5, United States Code, Section 8340, and other unspecified statutes, providing for federal pensions, which grant increased payments to offset increases in the Consumer Price

Index to persons who once worked for the federal government, is unconstitutional as to plaintiffs, who are pensioners under state and private pension plans. Plaintiffs contend that similar indexing payments must be provided by the federal government to their pensions in order to guarantee them equal protection under the law. They seek retroactive payments and future increased pension payments.

Defendant United States has moved to dismiss the complaint on the grounds that this Court lacks subject matter jurisdiction, and that the complaint fails to state a claim upon which relief may be granted. For the reasons stated herein, we grant the United States' motion to dismiss the complaint.

## JURISDICTION

■ We are initially faced with the question of this Court's jurisdiction over the subject matter of this dispute. Plaintiffs argue that jurisdiction is premised on 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, yet these statutes confer federal jurisdiction only regarding actions committed under color of state law, whereas here the plaintiffs are alleging the unconstitutionality of a statute enacted by the Congress of the United States. As plaintiffs correctly assert in their Brief Opposing Defendant's Motion to Dismiss, however, where facts giving the Court jurisdiction have been set forth, the statutory provision conferring jurisdiction need not be specifically pleaded. *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969).

■ The United States argues that an allegation of the denial of a constitutional right does not in itself confer jurisdiction on the federal courts. But it is well established that the Constitution itself gives a person deprived of constitutionally guaranteed rights a cause of action to redress that deprivation, even without any statutorily created cause of action. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Furthermore, statutory jurisdiction can be found in 28 U.S.C. § 1331(a), which grants the federal district courts original jurisdiction of all civil actions arising under the Constitution or laws of the United States and, if brought against the United States, without regard to jurisdictional amount.

■ In arguing this Court's lack of jurisdiction, the United States contends that plaintiffs have demonstrated no deprivation of a constitutionally protected right to bring them within 28 U.S.C. § 1331. But the jurisdiction of this Court does not turn on the merits of plaintiffs' claim. Where the plaintiffs' jurisdiction-conferring claims are not insubstantial on their face, further consideration of the merits of the claim are irrelevant to a determination of the Court's jurisdiction of the subject matter.

## SOVEREIGN IMMUNITY

The United States urges further that the law is well settled that the United States as a sovereign is immune from suit except where Congress has by specific statute waived this immunity. This argument overlooks the long established constitutional exception to the doctrine of sovereign immunity. *Larson v. Domestic and Foreign Corporation*, 337 U.S. 682, 690, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949).

■ The constitutional exception to the doctrine of sovereign immunity is not, however, as sweeping as plaintiffs contend. In *Larson*, the Court announced in effect that it would engage in the legal fiction that a suit against a government officer in his official capacity was not a suit against the sovereign, and hence not subject to the doctrine of sovereign immunity, only if premised on actions by the officer which were either (1) beyond the scope of his statutory powers, or (2) even though within the realm of his delegated authority, constitutionally void. *Larson's* requirement that a particular federal officer or officers be named, individually or by title, in order to preclude the application of the doctrine of sovereign immunity has recently been restated. *State of Washington v. Udall*, 417 F.2d 1310 (9th Cir. 1969); *Schlafly v. Volpe*, 495 F.2d 273 (7th Cir. 1974).

This requirement was substantially reaffirmed by Congress in P.L. 574, adopted in 1976, which added language to § 702 of the Administrative Procedure Act. Congress there specified that an action against the United States, seeking relief other than money damages, shall not be barred by the doctrine of sovereign immunity, as long as it states a claim that "an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority . . . ."

Contrary to the suggestion of plaintiffs, 28 U.S.C. § 1331 does not in itself operate to waive the requirement that particular agencies, officers or employees thereof be named. Section 1331 has not in the past been held to preclude the application of the doctrine of sovereign immunity. *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 531–32 (8th Cir. 1967); *Smith v. Grimm,* 534 F.2d 1346 (9th Cir. 1976). In 1976, section 1331 was amended to eliminate the amount in controversy requirement where actions were brought against the United States. In *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that this filling of a jurisdictional void did not operate to lift a pre-existing statutory bar to certain actions arising under the Social Security Act. By the same token, we presume that the amendment did not, in itself, remove the requirement that particular officers or agencies be named in a suit against the United States. Therefore, by failing to name a particular agency or officer within the federal government to whom a mandatory or injunctive decree could issue, the complaint is defective and should be. dismissed for this reason alone.

Even if the plaintiffs were to specify particular defendants within the United States government, the doctrine of sovereign immunity might still operate to bar this suit. The Supreme Court noted in *Larson* :

"Of course, a suit may fail as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief . . . will require affirmative action by the sovereign or the disposition of unquestionably sovereign property. . . ." 337 U.S. at 691, 69 S.Ct. at 1462.

The precise import of this statement has engendered much judicial controversy and scholarly debate. See, *e. g.,* Jaffe, "Suits Against Governments and Officers: Sovereign Immunity," 77 Harv.L.Rev. 1, 29–39 (1963); *Johnson v. Mathews,* 539 F.2d 1111, 1124 (8th Cir. 1976). But even in those opinions where footnote 11 of *Larson* has been narrowly construed, so as to confer merely a discretionary authority to dismiss complaints on grounds of sovereign immunity where particular governmental action is sought, it has been interpreted in such a way as to apply to the kind of relief plaintiffs here seek.

Were the plaintiffs to be successful in this action, the federal government would be required to meet any increase in the Consumer Price Index with corresponding payments to cover the extent of the inflation to every· person in the country benefiting from any form of pension plan. Nor is it clear that the government's liability would be limited to pensioners. For plaintiffs premise their contention that they are similarly situated to retired federal employees, beneficiaries under the statute challenged, on the grounds that the purpose of the statute was to relieve individuals supporting themselves on fixed incomes. On its face, federal assistance to all who happen to be beneficiaries of pension plans to cover increases in the cost of living, irrespective of need, would appear far more irrational and arbitrary a classification than limiting benefits under the statute to retired federal employees, to whom the government may rationally determine it has a special obligation. Thus a finding for plaintiffs would logically culminate in suits that would obligate the United States to cover the impact of inflation on all individuals on fixed incomes, or whose incomes fail to keep pace with increases in the cost of living, irrespective of personal need. The thrust of plaintiffs' argument, when carried

to its logical conclusion, boggles the imagination.

As the Ninth Circuit observed in *State of Washington v. Udall* :

"We believe that the Court's footnote 11 in *Larson* means that the purposes for the doctrine of sovereign immunity may be controlling in some suits against officers so that the suits must be dismissed as suits against the Government, even though the officers were not acting pursuant to valid statutory authority, because the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm." 417 F.2d at 1318.

The reasoning of the Ninth Circuit, respecting the significance of *Larson's* footnote 11, was considered persuasive by the Seventh Circuit in a recent decision, which was otherwise unsympathetic to expansive interpretation of the doctrine of sovereign immunity. The Court commented that "we construe footnote 11 as recognizing that the doctrine may bar a suit in exceptional cases." *Schlafly v. Volpe, supra* at 280.

Where sovereign immunity would bar a suit even though constitutional issues are raised, petitioners should seek the government action they desire from the Congress. To the extent that the doctrine of sovereign immunity survives, it has been justified by the argument that ultimately it should be Congress and not the courts which determine the disposition and utilization of property which belongs to all the people. *Knox Hill Tenant Council v. Washington*, 145 U.S. App.D.C. 122, 129, 448 F.2d 1045, 1052 (1971). Congress obviously would be the most natural forum in which to urge a proposal that would benefit such a large sector of the population.

## STANDING

The United States has also moved to dismiss on the ground that plaintiffs lack standing to bring this action because their alleged interest is undifferentiated from that of any other citizen, and is thus "too generalized to provide a basis for standing." *Harrington v. Schlesinger*, 528 F.2d 455, 459 (4th Cir. 1975). The United States further argues that the plaintiffs are not "similarly situated" to federal pensioners and thus are not covered by the equal protection requirements of the Due Process Clause of the Fifth Amendment.[1]

The concept of standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1961). Thus, in considering the issue of standing, we must put aside the merits of the plaintiffs' claim.

There are two components to the standing requirement. The first is whether the plaintiffs have made out a "case or controversy" between themselves and defendant within the meaning of Article III, § 2 of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing in this respect has been found when plaintiffs have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Plaintiffs clearly have alleged a personal stake in the outcome of the controversy inasmuch as they seek to be included within a class receiving federal monetary benefits.

The second aspect of the standing requirement is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing Service v. Camp*, 397 U.S. 150, 153,

---

1. Although the Fifth Amendment has no Equal Protection Clause, the Due Process Clause of the Fifth Amendment has been consistently interpreted as imposing essentially the same equal protection requirements on the federal government that are imposed on the states under the Fourteenth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). In order to maintain an action under the Due Process Clause on equal protection grounds, it is essential for plaintiffs to establish that they are "similarly situated" to the party being treated differently under the law. *Local Union No. 11, International Brotherhood of Electrical Workers v. Boldt*, 481 F.2d 1392, 1395 (Em.App.1973). Plaintiffs allege that they are similarly situated to those benefiting from the statute, the constitutional validity of which they question. The allegation that plaintiffs are a party similarly situated to federal pensioners is, on its face, an extremely dubious proposition.

*Data Processing, supra*, indicates that the contention that plaintiffs' interest is within the "zone of interests" protected must be at least "arguable." Other recent Supreme Court opinions, however, have suggested that a complaint meets the requirements of standing if it merely alleges that plaintiffs have a personal stake in the outcome (and have an interest which the statute or constitutional guarantee is designed to protect), *e. g., Flast v. Cohen, supra; Baker v. Carr, supra.* The law of standing is most confused. Professor Freund has observed that the concept is "among the most amorphous in the entire domain of public law." Hearings on S. 2097 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 89th Cong., 2d Sess., pt. 2, at 498 (1966). In *Data Processing*, Mr. Justice Douglas, writing for the majority, observed: "Generalizations about standing to sue are largely worthless as such." *Id.*, 397 U.S. at 151, 90 S.Ct. at 829. The one generalization that might safely be made is that there has been a definite trend toward easing standing requirements. K. Davis, "The Liberalized Law of Standing," 37 U.Chi.L.Rev. 450 (1970). Especially in light of this trend, we believe that it is more logical to interpret the standing requirement here as merely insuring that the plaintiffs have properly alleged that their interests are within the zone of interests protected by the law. Otherwise, as Professor Scott has pointed out: "A determination of whether plaintiff's interest is pro-

tected by the statute then comes to turn on a determination of the merits of his legal argument, and we are back to the problem of circularity." Kenneth Scott, "Standing in the Supreme Court—A Functional Analysis," 86 Harv.L.Rev. 645, 664 n. 88 (1973).

This would also appear to reflect correctly the underlying theme of recent Supreme Court decisions on standing. Contrast, for example, *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) with *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), two cases involving actions brought to protect environmental interests.

In *Sierra*, standing was denied because plaintiff failed to allege that it would be directly harmed by the government action in dispute, whereas in *SCRAP*, standing was upheld where plaintiffs claimed a direct non-economic stake in the outcome, even though the injury alleged was not specific and geographically limited, and was far less significant and perceptible than that claimed in *Sierra*. The two cases appear to be reconcilable only if the standing requirement focuses exclusively on the allegations and not at all on the merits. We hold, therefore, that plaintiffs have standing because they have at least alleged that they are similarly situated to the class benefiting under the statute challenged.

## MERITS

With respect to the merits of plaintiffs' claim, it is clear that plaintiffs are not similarly situated to federal pensioners. They would only be so regarding the statute here challenged if they were former federal employees. The requirements of equal protection do not preclude the government's treating different classes of people in different ways. *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Eisenstadt v. Baird*, 405 U.S. 438, 447–48, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Regarding conditions of employment, including pension benefits, federal employees are in a class separate from other citizens. The United States as their em-

ployer has special obligations to them alone. In determining those conditions of employment, the United States, like all other employers, including those of plaintiffs', is acting in a proprietary capacity. The fact that plaintiffs happen to be pensioners, therefore, does not constitute a basis for maintaining that they are entitled to the same benefits provided by the federal government to its retired employees.

■ Even were we to assume, somehow, that plaintiffs were similarly situated to federal pensioners, this complaint would still be utterly without merit. Plaintiffs contend that the increase in pension benefits for federal employees alone constitutes a "suspect classification." This argument can only suggest a complete misunderstanding of "equal protection" analysis. While the finding of a suspect classification will invalidate a statute in the absence of a compelling state interest, the judicial determination that a classification is suspect has only been made with certain groups "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). The only classifications which the Supreme Court has denominated "suspect" pertain to generally immutable characteristics present at birth, such as race, *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); alienage, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); and perhaps sex, *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977).

■ Where a suspect classification is not involved, equal protection analysis requires strict scrutiny of a legislative classification only where the classification impermissibly interferes with the exercise of a "fundamental right." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). As beneficiaries of private pension plans could

hardly claim to be a suspect class, neither could they maintain that they have a "fundamental right" to the same benefits as former federal employees. The Supreme Court has consistently held that no fundamental right exists regarding participation in public assistance programs. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ Equal protection claims, however, need not be premised on suspect classifications or fundamental rights. Where they otherwise attack governmental action, it is sufficient to sustain the constitutionality of the action challenged that it be rationally based and free from invidious discrimination. *Dandridge, id.* at 487, 90 S.Ct. 1153. It simply makes no sense to urge that the government's cost of living increase in pension benefits granted to its own retired employees is utterly lacking in a rational purpose.

Moreover, the logical conclusion of plaintiffs' contentions is that all public and private pension plans would have to be identical or the federal government make up the difference, to the extent that other plans were less favorable than those established for federal employees. Presumably federal employees would have an "equal protection" claim to the extent that other plans were more favorable.

The "equal protection" clause obviously does not compel such a result. Federal, state and local governments as well as private employers still have wide latitude as to whether or not to adopt pension plans and the particular terms thereof.

We therefore grant the United States' motion to dismiss this complaint.

An appropriate order will enter.