Emmett M. CLARK, Richard Cubbage, James A. Dorsey, A. D. McLane, and John G. Terhune, Plaintiffs-Appellants,

v.

UNITED STATES of America; Donald J. Devine, Director, Office of Personnel Management; and Donald T. Regan, Secretary of the Treasury, Defendants-Appellees.

No. 82-1239.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1982.

Decided Oct. 27, 1982.

Rehearing Denied Nov. 22, 1982.

See also 652 F.2d 69.

Richard T. Cubbage, Evanston, Ill., for plaintiffs-appellants.

Daniel C. Murray, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and DUMBAULD, Senior District Judge.*

CUMMINGS, Chief Judge.

Plaintiffs-appellants appeal from the district court's order granting defendants' motion to dismiss for lack of jurisdiction under the doctrine of sovereign immunity. We find jurisdiction under 28 U.S.C. § 1331(a) to hear the declaratory judgment claim and hold against plaintiffs on the merits.

Plaintiffs are pensioners under various state and private pension plans. They challenge the constitutionality of 5 U.S.C. § 8340, which provides for cost-of-living adjustments of annuities payable from the Civil Service Retirement and Disability Fund to pensioners who once worked for the federal government. They claim that the statute violates the equal protection clause embodied in the due process clause of the Fifth Amendment because it mandates cost-of-living adjustments for federal, but not state or private pensioners.

Plaintiffs' original complaint named only the United States as defendant and primarily sought monetary relief. The case was heard by Judge Will, who ruled that jurisdiction existed under 28 U.S.C. § 1331(a), but that the cause of action was barred by the doctrine of sovereign immunity. 447 F.Supp. 172 (N.D.Ill.1978). On appeal, this Court held in a *per curiam* opinion that Section 1331(a) did not provide jurisdiction, vacated the district court's decision, and directed it to transfer the case to the Court of Claims because plaintiffs' suit for "retroactive and future additions to their pensions from the United States * * * is subject to

---

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

the defense of sovereign immunity unless brought in the Court of Claims * * *." 596 F.2d 252, 253 (7th Cir. 1979). In an unreported opinion authored by the late Judge Kunzig, the Court of Claims subsequently dismissed the case for lack of subject-matter jurisdiction because plaintiffs' constitutional claim does not itself obligate the federal government to pay money damages as required for Tucker Act jurisdiction (28 U.S.C. §§ 1346, 1491). 652 F.2d 69 (Ct.Cl. 1981). The correctness of that decision is not before us.

Plaintiffs then realleged the substance of their original complaint, adding the Director of the Office of Personnel Management and the Secretary of the Treasury as defendants, and seeking declaratory, injunctive, and monetary relief. Judge Aspen, in his memorandum opinion, concluded that this Court's first *Clark* opinion was determinative of the case. "Plaintiffs' original effort to obtain compensation from the federal treasury was, in fact, the basic reason why the Seventh Circuit concluded that the district court had no jurisdiction over this matter. * * * To permit plaintiffs to invoke federal jurisdiction merely by naming two individual defendants and describing this action as declaratory or mandatory would elevate form over substance." App. 31.

The issues on this appeal are (1) whether this Court's prior decision requires dismissal of the case, (2) if not, whether sovereign immunity precludes jurisdiction over the case in its present posture, and (3) if not, whether 5 U.S.C. § 8340 is unconstitutional.

I

This Court first considered plaintiffs' claim in 1979. At that time, we characterized the original complaint against the United States as one seeking primarily money damages in excess of $10,000.[1] We held that the sovereign immunity of the United States precluded district court juris-

diction over such a claim for damages under 28 U.S.C. § 1331(a), and that the Tucker Act, 28 U.S.C. § 1346, did not waive sovereign immunity for claims over $10,000 in the district court. 596 F.2d at 253. Jurisdiction was thus thought to be proper in the Court of Claims, in which plaintiffs could have been awarded the monetary relief they sought. *Id.* at 253–254.

As seen, plaintiffs have since filed a new complaint, adding individual defendants and praying for declaratory, injunctive and monetary relief. Thus our prior characterization for purposes of determining whether jurisdiction existed in the district court or the Court of Claims is not necessarily binding on us while we consider the case in its present posture. We reaffirm that plaintiffs' request for damages against the United States in excess of $10,000 is barred in the district courts by the Tucker Act and doctrine of sovereign immunity. However, sovereign immunity does not preclude a determination of the merits of plaintiffs' prayer for declaratory relief.

II

It is a well established rule that the United States cannot be sued without its consent. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114; *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058. However, "[t]he extent to which sovereign immunity may bar an action against a federal officer for acts done in his or her official capacity is an extraordinarily difficult question that Supreme Court decisions have failed to clarify adequately." C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3655, at 177 (1976). Regardless of whether or not the United States is a named defendant, a suit is considered to be against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Land*

---

1. Plaintiffs requested declaratory relief as well, though the Court of Claims could have awarded the monetary relief with "no necessity for a declaratory judgment, for plaintiffs would have won their Constitutional argument in order to succeed." 596 F.2d 252, 254 (7th Cir. 1979), citing *Cook v. Arentzen,* 582 F.2d 870, 878 (4th Cir. 1978).

*v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209. Plaintiffs' second complaint seeks damages in the form of retroactive cost-of-living adjustments, a mandatory injunction ordering future cost-of-living adjustments, and a declaratory judgment that 5 U.S.C. § 8340 is unconstitutional. Plaintiffs' damage claim for retroactive additions to their pensions "mandates compensation" from the United States' treasury, 596 F.2d 252, 253 (7th Cir. 1979), and is therefore in substance a suit against the United States.[2] Without a statutory waiver, the district courts have no jurisdiction over a claim for damages against the United States, 1 Moore's Federal Practice, ¶ 0.65[2.–1], at 700.92 (2d ed. 1976), and the Tucker Act bars their jurisdiction over claims like these in excess of $10,000.[3]

The prayers for declaratory and injunctive relief pose a different problem. In deciding whether a suit against an officer for non-monetary relief is in essence a suit against the United States, this Court must consider *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, and its progeny. In *Larson,* the Supreme Court applied the general rule of *Land v. Dollar, supra,* holding that a suit against the War Assets Administrator was in reality a suit against the United States, because the relief sought involved disposition of the property of the United States. The Court announced however that in a suit for specific relief, it would engage in the legal fiction that a suit against a government officer in his official capacity is not a suit against the sovereign if (1) the officer's powers are limited by statute and his actions were *ultra vires,* or (2) the officer was acting unconstitutionally

or pursuant to an unconstitutional grant of power from the sovereign. *Larson, supra,* at 689–690, 69 S.Ct. at 1461; see also *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15; *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168.

Plaintiffs argue that 5 U.S.C. § 8340 creates an unconstitutional classification and that defendant federal officers' actions thus fall within the second *Larson* exception.[4] Defendants respond that sovereign immunity may preclude certain types of relief against the government, even when an officer may have acted unconstitutionally. The Supreme Court in its *Larson* opinion, *supra,* at 691 n. 11, 69 S.Ct. at 1462 n. 11, stated:

> Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested can not be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

This Circuit has interpreted footnote 11 narrowly, holding that it was not intended to bar all suits for affirmative relief or recovery of property of the United States. Rather, sovereign immunity precludes suits falling within the *Larson* exceptions only "where to do otherwise would impose 'an intolerable burden on governmental functions, outweighing any consideration of private harm'." *Schlafly v. Volpe,* 495 F.2d 273, 280 (7th Cir. 1974), quoting *State of Washington v. Udall,* 417 F.2d 1310, 1318 (9th Cir. 1969).[5]

---

**2.** Plaintiffs do not allege any personal wrongdoing on the part of the federal officers, and the new complaint does not request damages from them in their individual capacities.

**3.** Plaintiffs' second complaint again alleges that the matter in controversy exceeds $10,000, thus precluding district court jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2).

**4.** Accepting this proposition for jurisdictional purposes, of course, does not affect determination of the merits. Unless the allegations of the complaint are "so transparently insubstantial

or frivolous as to afford no possible basis for jurisdiction," the court will adopt the averments at face value. *Carter v. Seamans,* 411 F.2d 767, 770 (5th Cir. 1969).

**5.** Plaintiffs argue that the intolerable burden exception has never been applied to deny jurisdiction to hear a suit based on *Larson's* second "unconstitutionality" exception. Though not crucial to our holding, we take note of *De Lao v. Califano,* 560 F.2d 1384 (9th Cir. 1977), in which the plaintiffs alleged that the Secretary of Health, Education and Welfare acted uncon-

Plaintiffs' request for a declaratory judgment that 5 U.S.C. § 8340 is unconstitutional does not impose an intolerable burden on governmental functions. A declaratory judgment is just that: a declaration of rights. It is not a coercive remedy like an injunction or a money judgment. See 6A Moore's Federal Practice ¶ 57.10 (2d ed. 1976). Were we to hold that sovereign immunity barred an action for declaratory relief in this context, the ability of an individual to challenge the constitutionality of a statute would be severely restricted.[6]

### III

Since both parties briefed and argued the merits of this case in a prior appeal to this Court, and since the justiciable part of the case requires resolution solely of a question of law, we shall dispose of the merits here rather than cause unnecessary delay by a remand to the district court.[7] Cf. *Perkins v. Matthews,* 400 U.S. 379, 386–387, 91 S.Ct. 431, 435, 27 L.Ed.2d 476.

The Civil Service Retirement Act, 5 U.S.C. §§ 8331 *et seq.,* provides retirement and disability benefits for federal employees. The employing agency deducts a percentage of an employee's basic pay, combines it with an equal amount contributed by the appropriate governmental agency, and deposits it in the Treasury to the credit of the Civil Service Retirement and Disability Fund, 5 U.S.C. § 8334. When an eligible employee retires, he is entitled to an annuity payable by the Fund, 5 U.S.C. § 8333. Each annuitant also receives cost-of-living increases as provided by 5 U.S.C. § 8340.

In 1969 Congress addressed the problem of the unfunded liability of the Fund by authorizing a permanent indefinite appropriation for transfer of general funds from the Treasury. See S.Rep.No.91–339, 91st Cong., 1st Sess., reprinted in 1969 U.S.Code Cong. & Ad.News 1168, 1169. Plaintiffs claim that cost-of-living increases paid from general revenues after 1969 are a form of welfare benefits assisting only federal retirees, while all pensioners "are affected by the same inflationary prices, and must pay more to meet their needs." (Complaint, par. 17, App. 22). Plaintiffs assert that 5 U.S.C. § 8340 authorizing such benefits is unconstitutional because it creates a class of citizens—retired federal employees—and extends to it certain benefits denied to other citizens.

We begin with the proposition that equal protection requires like treatment of persons similarly situated. *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225. In a superficial sense, it may be true that state and private pensioners are similarly situated to federal pensioners, because both classes of people are retired and receiving pensions. However, the cost-of-living supplements in this case are not general welfare benefits bestowed unequally on similarly situated pensioners, but instead are employment or fringe benefits granted equally to all federal employees. But Judge Will correctly ruled that with regard to conditions of employment, including pension benefits, federal employees are in a different situation than other citizens. The United States, acting in its proprietary

stitutionally in withholding benefits prior to a hearing. The Ninth Circuit held that the relief sought would work an intolerable burden on the government. *Id.* at 1391.

**6.** This case does not require us to decide whether sovereign immunity would bar a declaratory judgment that entitled plaintiffs to affirmative relief from the government. Similarly, because we hold against plaintiffs on the merits, there is no need to decide if the mandatory injunctive relief requested here is the type of affirmative relief the intolerable burden exception is meant to preclude. Compare *Schlafly v. Volpe,* 495 F.2d 273 (7th Cir. 1974) with *Jarecki v. United States,* 590 F.2d 670 (7th Cir.

1979); cf. *Edelman v. Jordan,* 415 U.S. 651, 666–668, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (Eleventh Amendment does not preclude equitable relief with significant fiscal impact on state treasury if it is an ancillary effect of a prospective court decree).

**7.** Although plaintiffs did not brief the merits on this appeal from Judge Aspen's dismissal, they attached copies of their original briefs to their pleadings before the district court. Defendants did brief the issue on this appeal. Thus the legal arguments on both sides are of record and can appropriately be resolved here.

rather than its governmental capacity, has special responsibilities and obligations to its employees that it does not have to non-federal employees. "The mere fact that plaintiffs happen to be pensioners, therefore, does not constitute a basis for maintaining that they are entitled to the same benefits provided by the federal government to its retired employees." 447 F.Supp. at 178.

■ Plaintiffs' claim fails even if it were conceded that non-federal and federal pensioners are similarly situated. Both parties agree that the statute must be upheld if the distinctions it draws bear a rational relationship to a legitimate state end. *Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186; *McDonald v. Board of Election*, 394 U.S. 802, 808–809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (Def. Br. at 24; Pl. Reply Br. at 11). To so determine, the statute's objectives must be examined.

The Civil Service Retirement system was enacted in 1920. Its primary objective today is the same as it was originally:

> to help improve staff or, put in more current terms, to make a positive contribution to that pursuit of excellence which is the fundamental purpose of the personnel systems in which they operate. To make such a contribution, a retirement system must remove, in an orderly and humane fashion, the superannuated, the incapacitated, and those who for other reasons have become unable after years of service to do the current job. Otherwise the whole flow of promotion and succession to which recruitment, training, and assignment of younger people are geared will be blocked and the most vigorous and productive individuals, finding themselves stalemated, will leave the service, or never be persuaded to enter it in the first place. * * * This primary retirement objective is essentially an employer, or management, objective; and, since the employer in this case is the public, the management purpose cannot be lightly regarded.

Appendix to the Report to the President of the United States by the Cabinet Committee on Federal Staff Retirement Systems, Senate Document 14, 90th Cong., 1st Sess., April 6, 1967, at 12. Thus the purpose of the statute is to allow the federal government to compete with the private sector by offering federal employees an attractive retirement plan. Such a deferred compensation plan encourages (1) qualified individuals to apply for government positions, (2) current employees to continue with a government career, and (3) older, less productive employees to retire. Attracting and retaining qualified employees is a legitimate state objective that is rationally achieved by a retirement plan offering economic inducement in the form of a cost-of-living increase.

Plaintiffs argue, however, that 5 U.S.C. § 8340 provides cost-of-living increases to federal pensioners who were already retired in 1969.[8] Such payments, they claim, do not provide a rational means of attaining the above-noted state objective because federal employees who have already retired cannot be induced to apply for government work, remain in government work, or retire. Plaintiffs themselves admit that the cost-of-living formula is also designed "to protect the purchasing power of * * * civilian * * * retired pay." S.Rep.No.91–623, 91st Cong., 1st Sess., reprinted in 1969 U.S.Code Cong. & Ad.News 2693, 2693. Cost-of-living increases as provided in 5 U.S.C. § 8340 are surely a rational means of attaining this objective. Plaintiffs argue, however, that this is not a legitimate state objective.

We disagree for two reasons. First, plaintiffs undoubtedly would concede that the state can enact legislation designed to protect the purchasing power of all its citizens. If this is true, "Congress rationally may elect to shoulder only a part of the burden," taking a step in the right direction. *Schweiker v. Wilson*, 450 U.S. 221, 238, 101 S.Ct. 1074, 1084, 67 L.Ed.2d 186; see also *Califano v. Jobst*, 434 U.S. 47, 57–58, 98 S.Ct. 95, 101, 54 L.Ed.2d 228; *Rich-*

**8.** Plaintiffs Dorsey, Cubbage, and Terhune retired after 1969; Clark and McLane retired before 1969.

*ardson v. Belcher,* 404 U.S. 78, 83–84, 92 S.Ct. 254, 258, 30 L.Ed.2d 231. By focusing on its own retirement system, the federal government "sets a good example for other employers," who may choose to follow suit. Appendix to the Report to the President, *supra,* at 13.

Second, the state's interest in providing a "reward" for past government service has been legitimized in cases considering veterans' preferences in employment. See, *e.g., White v. Gates,* 253 F.2d 868, 869 (D.C.Cir. 1957), certiorari denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147; *Koelfgen v. Jackson,* 355 F.Supp. 243, 251–252 (D.Minn. 1972), affirmed, 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173. There is of course no reason to conclude that the state's objective is legitimate when applied to veterans but illegitimate when applied to retired federal employees.[9]

The judgment of the district court dismissing the cause for lack of jurisdiction is reversed. Since 5 U.S.C. § 8340 is constitutional, the relief requested by plaintiffs is denied. The district court is directed to enter judgment for defendants.

---

**9.** Plaintiffs bring to our attention *Zobel v. Williams,* —— U.S. ——, —— ——, 102 S.Ct. 2309, 2313, 72 L.Ed.2d 672 (1982), in which the Supreme Court held that Alaska's desire to reward long-term state residents for past contributions was not a legitimate state objective. The Supreme Court has long held that rights, benefits, and services cannot be apportioned according to length of residency. *Id. Zobel* merely reaffirms this; it does not address the question whether the federal government's desire to "reward" civilian or military employees is a legitimate state objective.