LAND, CHAIRMAN, UNITED STATES MARITIME COMMISSION, ET AL. *v.* DOLLAR ET AL.

No. 207. Argued February 11, 12, 1947.—Decided April 7, 1947.

732

*Paul A. Sweeney* argued the cause for petitioners. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, Melvin Richter, Ellis Lyons* and *Paul D. Page.*

*Gregory A. Harrison* argued the cause for respondents. With him on the brief were *Moses Lasky, Clinton M. Hester* and *M. M. Kearney.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioners are present and former members of the United States Maritime Commission. Respondents are stockholders of Dollar Steamship Lines, Inc., Ltd. (Dollar of Delaware), whose corporate name was changed to American President Lines, Ltd., subsequent to the execution in 1938 of a contract out of which the present litigation arises. By 1937 Dollar of Delaware was in difficult financial straits. The problems confronting it and the various steps taken to remedy the situation need not be recapitulated here.[1] It is sufficient for purposes of the various questions presented by this case to say that the Commission and respondents entered into a contract in 1938 by which respondents delivered their common stock in Dollar of Delaware, endorsed in blank, to the Commission; and the Commission released some of respondents from certain obligations and agreed to grant Dollar of Delaware an operating subsidy and to make a loan to it and to obtain for it another loan from the Reconstruction Finance Corporation.

---

[1] The details of the difficulties, and the steps taken to remedy them are contained in two reports to Congress by the Commission: (1) Financial Readjustments in Dollar Steamship Lines, Inc., Ltd., dated February 17, 1938; (2) Reorganization of American President Lines, Ltd., dated April 10, 1939.

The subsidy was granted and the loans were made. By 1943 American President Lines, Ltd., had fully paid all indebtedness due the United States. Respondents thereupon demanded return of their shares of stock from the then members of the Commission, claiming that the shares had only been pledged as collateral for a debt which had been paid. The members of the Commission refused to surrender the shares, claiming that they had not been pledged under the 1938 contract but transferred outright. Acting on that theory the Commission had indeed offered the shares for sale and had under consideration substantial offers to purchase them.

Thereupon respondents instituted the present suit in the District Court for the District of Columbia, see 11 D. C. Code, §§ 301, 305, 306, claiming that petitioners were unlawfully in possession of respondents' stock and illegally withholding it. The prayer was that petitioners be restrained from selling the shares and be directed to return them to respondents. Respondents moved for a preliminary injunction. Petitioners submitted affidavits opposing the motion. After a hearing, the District Court on its own motion dismissed the complaint with prejudice, holding that the suit was against the United States. The Court of Appeals reversed. 81 U. S. App. D. C. 28, 154 F. 2d 307. The case is here on a petition for a writ of certiorari which we granted because of the importance of the question presented.[2]

*First.* The facts asserted in the affidavits support the view that the 1938 contract called for the outright transfer of the shares, not for their pledge. But we put the affidavits to one side for two reasons. In the first place, the function of the affidavits was to oppose the motion for a

---

[2] Although the judgment below was not a final one, we considered it appropriate for review because it involved an issue "fundamental to the further conduct of the case." *United States* v. *General Motors Corp.*, 323 U. S. 373, 377.

preliminary injunction. The case had not been submitted for decision on the merits. Issue, indeed, had not yet been joined. And the ruling of the District Court, as we read it, was based on the premise that since the Commission had the right to make the contract, the suit was against the United States.[3] Hence we do not think the District Court in fact relied on the affidavits in dismissing the complaint. In the second place, although as a general rule the District Court would have authority to consider questions of jurisdiction on the basis of affidavits as well as the pleadings,[4] this is the type of case where the question of jurisdiction is dependent on decision of the merits.

The allegations of the complaint, if proved, would establish that petitioners are unlawfully withholding respondents' property under the claim that it belongs to the United States. That conclusion would follow if either of respondents' contentions were established: (1) that the Commission had no authority to purchase the shares or acquire them outright; or (2) that, even though

---

[3] The District Court said: ". . . I think . . . that the Commission had the legal right; and therefore I think it is inescapable that this is a suit against the United States and therefore that the complaint must be dismissed . . . ."

[4] In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered. *Polk Co.* v. *Glover*, 305 U. S. 5, 9; *Gibbs* v. *Buck*, 307 U. S. 66, 76. But when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, Judicial Code § 37, 28 U. S. C. § 80, Fed. R. Civ. P. 12 (b), the court may inquire, by affidavits or otherwise, into the facts as they exist. *Wetmore* v. *Rymer*, 169 U. S. 115, 120–121; *McNutt* v. *General Motors Corp.*, 298 U. S. 178, 184 *et seq.*; *KVOS, Inc.* v. *Associated Press*, 299 U. S. 269, 278. As stated in *Gibbs* v. *Buck, supra*, pp. 71–72, "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."

such authority existed, the 1938 contract resulted not in an outright transfer but in a pledge of the shares.

If respondents are right in these contentions, their claim rests on their right under general law to recover possession of specific property wrongfully withheld. At common law their suit as pledgors to recover the pledged property on payment of the debt would sound in tort.[5]

If viewed in that posture, the case is very close to *United States* v. *Lee*, 106 U. S. 196. That was an action in ejectment to recover possession of a tract of land. The defendants were military officers who, acting under orders of the President, took possession of the land and converted one part into a fort and another into a cemetery. For the lawfulness of their possession they relied on a tax sale of the property to the United States. On the trial it was held that the claim of the plaintiffs to the land was valid and that the defendants were wrongfully in possession. The Court affirmed the judgment over the objection that the suit was one against the United States. It held that the assertion by officers of the Government of their authority to act did not foreclose judicial inquiry into the lawfulness of their action; that a determination of whether their "authority is rightfully assumed is the exercise of jurisdiction, and must lead to the decision of the merits of the question." P. 219. It further held that while such an adjudication is not *res judicata* against the United States because it cannot be made a party to the suit, the courts have jurisdiction to resolve the controversy between those who claim possession. And it concluded that an agent or officer of the United States who acts beyond his authority is answerable for his actions. And see *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 619–620; *Sloan Shipyards Corp.* v. *United States Fleet Corp.*, 258 U. S. 549, 567.

---

[5] Restatement of the Law of Torts, §§ 223, 237; 3 Street, Foundations of Legal Liability (1906), p. 160.

Where the right to possession or enjoyment of property under general law is in issue, and the defendants claim as officers or agents of the sovereign, the rule of *United States* v. *Lee, supra,* has been repeatedly approved. *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 446, 452; *Tindal* v. *Wesley,* 167 U. S. 204; *Smith* v. *Reeves,* 178 U. S. 436, 439; *Scranton* v. *Wheeler,* 179 U. S. 141, 152–153; *Philadelphia Co.* v. *Stimson, supra,* pp. 619–620; *Goltra* v. *Weeks,* 271 U. S. 536, 545; *Ickes* v. *Fox,* 300 U. S. 82, 96; *Great Northern Life Ins. Co.* v. *Read,* 322 U. S. 47, 50–51. That rule is applicable here although we assume that record title to the shares is in the Commission. In *United States* v. *Lee, supra,* record title of the land was in the United States and its officers were in possession. The force of the decree in that case was to grant possession to the private claimant. Though the judgment was not *res judicata* against the United States, p. 222, it settled as between the parties the controversy over possession. Precisely the same will be true here, if we assume the allegations of the complaint are proved. For if we view the case in its posture before the District Court, petitioners, being members of the Commission, were in position to restore possession of the shares which they unlawfully held.

We do not trace the principle of *United States* v. *Lee, supra,* in its various ramifications. Cases on which petitioners rely are distinguishable. This is not an indirect attempt to collect a debt from the United States by preventing action of government officials which would alter or terminate the contractual obligation of the United States to pay money. See *Wells* v. *Roper,* 246 U. S. 335; *Mine Safety Co.* v. *Forrestal,* 326 U. S. 371. It is not an attempt to get specific performance of a contract to deliver property of the United States. *Goldberg* v. ·*Daniels,* 231 U. S. 218. It is not a case where the sovereign

admittedly has title to property and is sued by those who seek to compel a conveyance or to enjoin disposition of the property, the adverse claims being based on an allegedly superior equity or on rights arising under Acts of Congress. *Cunningham* v. *Macon & Brunswick R. Co., supra; Minnesota* v. *Hitchcock,* 185 U. S. 373; *Oregon* v. *Hitchcock,* 202 U. S. 60; *Naganab* v. *Hitchcock,* 202 U. S. 473; *Louisiana* v. *Garfield,* 211 U. S. 70; *Morrison* v. *Work,* 266 U. S. 481. And see *Stanley* v. *Schwalby,* 162 U. S. 255, 271–272.

We say the foregoing cases are distinguishable from the present one, though as a matter of logic it is not easy to reconcile all of them. But the rule is based on practical considerations reflected in the policy which forbids suits against the sovereign without its consent. The "essential nature and effect of the proceeding" may be such as to make plain that the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration. *Ex parte New York,* 256 U. S. 490, 500, 502. If so, the suit is one against the sovereign. *Mine Safety Co.* v. *Forrestal, supra,* p. 374. But public officials may become tort-feasors by exceeding the limits of their authority. And where they unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment. The dominant interest of the sovereign is then on the side of the victim who may bring his possessory action to reclaim that which is wrongfully withheld.

It is in the latter category that the pleadings have cast this case. That is to say, if the allegations of the petition are true, the shares of stock never were property of the United States and are being wrongfully withheld by petitioners who acted in excess of their authority as public officers. If ownership of the shares is in the United States, suit to recover them would of course be a suit against the

United States. But if it is decided on the merits either that the contract was illegal or that respondents are pledgors, they are entitled to possession of the shares as against petitioners, though, as we have said, the judgment would not be *res judicata* as against the United States. See *United States* v. *Lee, supra,* p. 222.

We intimate no opinion on the merits of the controversy. We only hold that the District Court has jurisdiction to determine its jurisdiction by proceeding to a decision on the merits.

*Second.* Motions were made by the Solicitor General to substitute as defendants the new members of the Commission for those who are no longer members.[6] We added the new members as petitioners-defendants, and dismissed as to a deceased member, but reserved decision as to the other former members. A majority of those joining in this opinion are of the view that it is more appropriate that both motions be considered by the District Court. The questions have not been briefed or argued here. Moreover, the present record may not present all the facts necessary for disposition of the motions. Accordingly, we vacate the order of substitution which we entered, so that the District Court may, on remand of the cause, pass on the motions unembarrassed by any action here.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE REED, concurring.

As I think this proceeding states a cause of action against the United States Maritime Commission, I do not

---

[6] See Fed. R. Civ. P. 25 (d); *Allen* v. *Regents,* 304 U. S. 439, 444–445.

agree with the manner of disposition. No damages are sought against the petitioners. Relief is sought that can only be obtained by an order directed against the Commission.

A contract between plaintiffs, Dollar et al., and the United States Maritime Commission, was attached to the complaint as an exhibit. The contract was not signed by any individual member of the Commission but by the Commission through its duly authorized special counsel. In the complaint, respondents alleged that they and their predecessors in interest "caused said shares of stock of the company to be transferred to the United States Maritime Commission." They further alleged that they made demand upon the "Maritime Commission for the return of said stock in July, 1945. This request was denied by the Maritime Commission in July, 1945." The ultimate result sought by the complaint was that the respondents "be directed and ordered by this court to return the plaintiffs' stock, now in the unlawful possession and custody of the defendants, to the plaintiffs, the lawful owners." Taken as a whole, I cannot read the complaint otherwise than as alleging that title and possession of this stock is now in the United States Maritime Commission. Although plaintiffs assert possession in the defendants, the other allegations and the attached contract show that defendants hold the stock by virtue of their official positions as members of the Commission. If the basic allegations were proven, the Commission would be shown to be in possession of the stock under a claim of right.

If that is the correct interpretation of the complaint, it follows of course that the Maritime Commission is an indispensable party to this proceeding. See *Commonwealth Trust Co.* v. *Smith,* 266 U. S. 152, 159. No matter how far beyond their statutory powers the members of the Commission may have acted in contracting with the

respondents or how illegal may be the retention of the certificates by the Commission under its claim of ownership through the contract, the transfer to the Commission, as alleged in the petition, put the title and possession of this property in the Maritime Commission and not in the petitioners as individuals. It may be that the Commission holds the stock wrongfully; but, if so, it can only be restored to the respondents by an act of the Commission. Under such circumstances, cases like *United States* v. *Lee,* 106 U. S. 196, are inapplicable. In the *Lee* case, an action in ejectment was brought to recover possession of land from officers of the United States who were wrongfully in possession of the land. That suit was not brought against the United States to compel the United States to retransfer title to the complainants or to quiet title in those who claimed against the United States. In *United States* v. *Lee,* the officer of the United States could be ejected from the real property involved without loss of title or right of possession to the United States. That is not the result in this case. A piece of paper, the stock certificate, will be taken from the hands of the Maritime Commission and placed in the hands of plaintiffs by a court decree, if plaintiffs are successful. If the decree is to be effective, it will require the individual defendants to transfer the certificates by endorsement of the name of the Maritime Commission or delivery, if the certificate is still in the name of the plaintiffs. The situation is as if the United States had been ordered by the decree in the *Lee* case to convey title to and possession of the property to Lee. Plaintiffs do not here seek damages for past acts of petitioners. Plaintiffs want property now in the possession of the Maritime Commission and to secure this relief, plaintiffs, I should think, must implead the Commission. Whether the Maritime Commission holds the property by title unchallenged by the plaintiffs or challenged by the plaintiffs

cannot, it seems to me, be determinative as to the necessity of making the Commission a party. See *Goldberg* v. *Daniels,* 231 U. S. 218.

Cases cited in the opinion of the Court as following the rule of *United States* v. *Lee* are not significant here. Two are similar cases of ejectment.[1] Other cases cited turn on liability of a sovereign to suits.[2] Still others are those which enjoin an officer from proceeding illegally.[3] In *Goltra* v. *Weeks,* 271 U. S. 536, 539, 549, there was a suit by a lessee to enjoin officers of the United States from taking possession of boats leased to the plaintiff by the Government and also to return the boats already taken. The prayer for a return of the property contained the possibility of the issue here raised but this Court treated the proceeding as one to enjoin a threatened trespass.

The present suit is for the return to the plaintiffs of property held by the Maritime Commission under a contract which the Dollar interests allege called for a return of the certificates to them on payment of a debt. Such a suit, it seems to me, is an effort to get possession of property actually in the possession of the Maritime Commission. This cannot be done without joining the Maritime Commission as a party defendant. See *Goldberg* v. *Daniels,* 231 U. S. 218; *Wells* v. *Roper,* 246 U. S. 335; *Morrison* v. *Work,* 266 U. S. 481, 487; *Mine Safety Co.* v. *Forrestal,* 326 U. S. 371.

As this appears to me as a suit against the Commission, I would affirm the judgment of the Court of Appeals, remanding this case to the District Court. There the ques-

---

[1] *Tindal* v. *Wesley,* 167 U. S. 204; *Scranton* v. *Wheeler,* 179 U. S. 141.

[2] *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 446; *Smith* v. *Reeves,* 178 U. S. 436; *Great Northern Ins. Co.* v. *Read,* 322 U. S. 47.

[3] *Ickes* v. *Fox,* 300 U. S. 82; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605.

tions of the suability of the Commission [4] and the effect of the Administrative Procedure Act of June 11, 1946, could be considered. There the merits of the controversy could be decided.

---

[4] Merchant Marine Act, 49 Stat. 1988, § 207, as amended, 52 Stat. 954, § 2:

"The Commission may enter into such contracts, upon behalf of the United States, and may make such disbursements as may, in its discretion, be necessary to carry on the activities authorized by this Act, or to protect, preserve, or improve the collateral held by the Commission to secure indebtedness, in the same manner that a private corporation may contract within the scope of the authority conferred by its charter." *Keifer & Keifer* v. *R. F. C.*, 306 U. S. 381.