**Ozella O. MONTAGUE et al., Appellants,**

v.

**Robert L. KUNZIG et al.**

**No. 24115.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 28, 1970.

Decided Jan. 18, 1971.

---

———◆———

Mr. Michael M. Kearney, Arlington, Va., for appellants.

Mr. John E. Lindskold, Atty., Department of Justice, with whom Mr. Edmund B. Clark, Atty., Department of Justice, was on the brief, for appellee Kunzig. Mr. S. Billingsley Hill, Atty., Department of Justice, also entered an appearance for appellee Kunzig.

Mr. Benjamin W. Dulany, Washington, D. C., for appellees Wade, Small, Gewirz, 1620 K Street Associates and Lawyers Title Insurance Corporation.

Before MacKINNON and WILKEY, Circuit Judges, and JOHNSON,* Chief Judge, U. S. District Court for the Middle District of Alabama.

PER CURIAM:

On 27 October 1942, the Reconstruction Finance Corporation requested the Attorney General of the United States to institute action to condemn the fee simple title to the Normandy Building, 1626 K Street, N.W., which was needed in connection with its expanding war activities. Executive Order 9217, dated 7 August 1942, authorized the Corporation to acquire property by condemnation.

The Attorney General filed a petition for condemnation of fee simple title to the property in the United States District Court for the District of Columbia on 30 October 1942. That same day, the District Court issued an order to Montague, the owner and appellant here, and the three mortgagees of the property directing surrender of the premises subject to determination of just compensation by the court.

Ten days later Montague and the Corporation executed an agreement establishing just compensation for the taking at $475,000.00. A Declaration of Taking with this agreement annexed was filed in the District Court by the Corporation the next day, with the sum of $475,000.-00 deposited into the registry of the court. Montague simultaneously petitioned for payment of the money, declaring it to be just compensation for the taking of fee simple title to the property by the United States and waiving any further right to participate in the condemnation proceeding. The court then entered judgment that title to the property was vested in the United States and directed payment to Montague of the money deposited.

Shortly thereafter, the court entered an order requiring that all persons occupying tenancies in the premises surrender possession. Certified copies of this order were mailed by the Reconstruction Finance Corporation to all tenants. Subsequently, the Corporation entered into possession, which did not terminate until early 1969, when by contract of exchange the building was sold to one Helen Wade.

In September 1969, asserting a variety of claims, appellant Montague and his wife sued the transferee, the escrow agent in the transfer, and the Administrator of the General Services Administration—successor to the Reconstruction Finance Corporation—to have the sale enjoined, the 1942 condemnation proceeding vacated, and ownership of the property revested in Montague. By amendment to the complaint an additional plaintiff, Henry George Kling, was added. Kling had been a tenant of the building in 1942 when it was condemned at the request of the Corporation, and had vacated the premises in accordance with the court order.

* Sitting by desigation pursuant to 28 U.S.C. § 292(c).

The District Court dismissed the complaint as untimely, *inter alia,* on motions of the defendants, and by separate order denied the injunction. From these actions the plaintiffs appeal.

I. *Scope of the Reconstruction Finance Corporation's Authority to Condemn*

Although never advanced in the District Court, the proposition that Executive Order 9217 authorized the Reconstruction Finance Corporation to acquire property *for temporary use only* has been strenuously urged on appeal. Since the Corporation could not acquire a fee simple interest in land by condemnation, so reason the appellants, the contract that it executed with Montague was either invalid or a lease of the property for so long as the Government occupied it. We consider the ramifications of neither of these conclusions, however, since in our view the proposition upon which they are based is wholly invalid.

Executive Order 9217 provides, in pertinent part, that "the Reconstruction Finance Corporation is hereby authorized to exercise the authority contained in the said Title II of the Second War Powers Act, 1942, to acquire, use, and dispose of any real property, temporary use thereof, or other interest therein, * * * that the Corporation shall deem necessary for military, naval, or other war purposes."[1] Because temporary uses of land are specifically mentioned in the order while fee simple interests are not, appellants seek to apply the doctrine of *ejusdem generis*[2] to prove the proposition that the order does not empower acquisition of the latter.

■ To make that doctrine applicable to this order, however, requires a purposeful misconstruction of its terms to negate its express mandates, three in number. First, the Corporation is empowered to condemn *any real property*; second, it is empowered to condemn the *temporary use* of any real property; and, third, it is empowered to condemn *any other interest* in real property that it considers essential to its war functions. The overall mandate of the order never was directed solely to the narrow area of temporary use; rather, it extended over a broad range of real property interests. And the first specific mandate of the order reasonably and clearly authorized the acquisition of the usual common law vested interests in land, including the estate in fee simple.

This is what the Corporation set out to do; the record shows that it was done; and fee simple title has vested and now vests in the Government or its grantees, unless some other ground exists for setting aside the acquisition of title by the Corporation.

II. *Appellant's Claim of Fraudulent Procurement of His Assent to the Compensation Agreement*

In his brief appellant Montague contends that the agreement executed between him and the Corporation was procured by threats of investigation by the Internal Revenue Service of transactions reported on his income tax return for the preceding year. He also alleges that the Reconstruction Finance Corporation agents who coerced him to sign the agreement never told him that he had a right to litigate the question of just compensation and that, contrary to provisions of the District of Columbia Code then in effect he had never received notice from the court of his right to be heard on this issue.[3]

---

1. 3 C.F.R. 1192 (1938–1943 Comp.).

2. The doctrine of *ejusdem generis* is explained in Bouvier's Law Dictionary (8th ed. 1914), as follows:
   In the construction of laws, wills, and other instruments, general words following an enumeration of specific things are usually restricted to things of the same kind (ejusdem generis) as those specifically enumerated.

3. The record shows that in its order of 30 October 1942 the court informed Montague that it would determine just compensation. In view of this, we do not accept Montague's contention that ten days later, when he signed the Agreement, he was completely unaware of his right to have the question of just compensation decided in that forum.

We are told by the appellant that he was unable to assert these claims before now, 28 years after the event, because his one proper remedy would have been an action in ejectment against the United States, an action that would have been barred as an unconsented suit against the sovereign. This position is untenable at best, and is in fact refuted by the appellants' own argument.

In their reply brief, appellants point to the Supreme Court decision in Land v. Dollar,[4] *inter alia*, to justify the delay. But in *Land* the Court found the doctrine of sovereign immunity inapplicable where, as here contended, public officials "become tort-feasors by exceeding the limits of their authority." In cases, said the Supreme Court, "where [public officials] unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment. The dominant interest of the sovereign is then on the side of the victim who may bring his possessory action to reclaim that which is wrongfully withheld."[5]

Assuming *arguendo* that prior to the day on which the Supreme Court handed down *Land*, Montague's right to a possessory action to reclaim his property was unrecognized in the District of Columbia, his cause was at least unmistakably born along with this decision. But that was 7 April 1947. From that date, the Statute of Limitations[6] has long since run.

▮ Finally, it is not at all clear that Montague's sole remedy would have been to maintain an action in ejectment. In 1942 he could have filed an action for fraud in the District Court praying for monetary relief on the very same facts he alleges now. Whether this would have necessitated reopening the condemnation proceeding or filing a new and independent action is immaterial, because vesting of fee simple title in the United States in no manner depended on the adequacy of his compensation. According to the statutory scheme in effect at that time, such title vested in the United States at the time of the filing of the Declaration of Taking regardless of the adequacy in the former owner's eyes of the Government's estimate of the property's worth.[7] A forum *was* available for the airing of appellant's grievances at the time. And the record fails to disclose any adequate reason why Montague did not pursue this tack instead of waiting 28 years to bring his claim. We agree with the District Court's finding that the Statute of Limitations has run against him on this as well as other grounds for his claim.

### III. *The Claim of the Tenant Kling*

Appellant Kling contends essentially that he was denied due process of law because he allegedly was not notified of his right to be heard in the District Court on the amount of damages he suffered due to truncation of his lease term by the condemnation. His claim is unavailing since the Statute of Limitations has also run against him.

▮ Accepting as true his contention that no notice was published regarding the holding of a hearing on the issue of

---

4. 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

5. *Id.*, at 738, 67 S.Ct. at 1012.

6. According to 12 D.C.Code § 301(1), the right to maintain an action for recovery of lands, tenements, or hereditaments expires 15 years after its accrual. This means that Montague's right to maintain his "action" would have expired 7 April 1962.

7. 16 D.C.Code (1940 ed.) § 628 provided that:

[U]pon the filing of said declaration of taking and of the deposit in the registry of the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said land shall be deemed to be condemned and taken for the use of the United States * *.

just compensation for the taking, he was in fact informed that his leasehold was being prematurely terminated when he received his copy of the District Court's order requiring him to vacate his leased premises. All of the damage to Kling flowing from the taking was either determinable at that point or shortly thereafter when he presumably made inquiries about moving costs and other accommodations. He could have sought redress for these damages then.

## IV. *The Dower Interest of Appellant's Wife*

Mrs. Montague, although the wife of the record owner of the property, never participated in the condemnation proceeding in any way. Citing United States ex rel. and for Use of Tenn. Valley Authority v. Spiceland[8] for support, she now claims that on the basis of her inchoate right of dower she should have been made a party to the proceeding in 1942, and demands to be compensated for the value of her interest.

██ Though her claim is as stale as her husband's, there is yet a more fundamental defect in her argument: Her reliance upon *Spiceland* is misplaced. That case merely held that a wife had a right to a portion of the *proceeds* of the condemnation in the hands of her husband—not that she had to be made a defendant to the condemnation and the value of her interest assessed separately from her husband's by the court. This case is thus a statement of the rule followed in a minority of jurisdictions that the inchoate right of dower is not extinguished by condemnation but attaches to the proceeds received by the husband. The majority of courts, it appears, have held that the inchoate right of dower *is* extinguished by condemnation.[9] Whichever rule best enunciates the position of this court on the question need not be decided here, however, since under neither does Mrs. Montague prevail.

## V. *Conclusion*

No adequate grounds for reversal having been shown by any of the appellants, the action of the District Court is

Affirmed.

---

8. 52 F.Supp. 40 (D.Ky.1943).

9. See the survey by Judge Chesnut in United States v. Certain Parcels of Land, 46 F.Supp. 441 (D.Md.1942).